IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JESSICA LYNN BURNETT,            )
                                 )
                Plaintiff,       )
                                 )
                                 )   Case No. CIV-20-133-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
                Defendant.       )

## OPINION AND ORDER

Plaintiff Jessica Lynn Burnett (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1]     Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 38 years old at the time of the ALJ's decision. She has a high school education and no past relevant work. Claimant alleges an inability to work beginning on February 2, 2018, due to limitations resulting from bipolar disorder and schizophrenia.

### Procedural History

On February 2, 2018, Claimant protectively filed her application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 10, 2019, ALJ Bill Jones conducted an administrative hearing in Fort Smith, Arkansas. Claimant was present and testified. On November 26, 2019, the ALJ entered an

unfavorable decision. Claimant requested review by the Appeals Council, and on April 1, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with additional nonexertional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) excluding limitations from the RFC, (2) failing to properly evaluate Claimant's subjective complaints and third-party statements, and (3) improperly questioning the vocational expert ("VE").

## RFC Assessment

In his decision, the ALJ found Claimant suffered from severe impairments of attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, generalized anxiety disorder, and panic disorder with agoraphobia. (Tr. 17). He determined Claimant could perform a full range of work at all exertional levels with additional nonexertional limitations. Claimant was limited to "simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes and no more than

4

incidental contact with co-workers, supervisors[,] and the general public." (Tr. 19).

After consultation with a VE, the ALJ determined Claimant could perform the representative jobs of dishwasher, warehouse worker, marking clerk, and routing clerk, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 26). As a result, the ALJ concluded Claimant had not been under a disability since February 2, 2018, the date the application was filed. (Tr. 26).

Claimant argues the ALJ's mental RFC assessment fails to account for all of her mental limitations and is not supported by substantial evidence. Specifically, she contends that the ALJ failed to take into account the limitations associated with her agoraphobia, paranoia, and anxiety, including not being able to leave home, her paranoia that people stare and laugh at her, and the anxiety she experiences when around other people. She maintains that the ALJ should have included limitations in the RFC to account for her expected absenteeism and the need to work in an isolated environment away from others.

When assessing the RFC, the ALJ considered Claimant's mental impairments, including her panic disorder with agoraphobia, paranoia, and anxiety. He discussed the evidence of Claimant's mental health treatment in detail in his decision. He noted that Claimant received mental health treatment while incarcerated.

Specifically, upon intake in March of 2015, Claimant underwent a
mental and physical screening at which time she did not report
nerve issues, sadness, depression, issues with memory, anxiety,
agitation, or irritation. She did not report that she had received
mental health treatment. (Tr. 20, 333-34). By April of 2015,
Claimant reported anxiety and trouble sleeping. Although she
appeared restless, her exam was otherwise within normal limits.
(Tr. 20, 331-32). Later mental examinations revealed depressed
mood, racing and scattered thoughts, and irritation in social
settings, but concentration, memory function, thought processes,
and insight and judgment were good. Claimant was prescribed
medication for her depression and anxiety. (Tr. 20, 302-03, 325).

The ALJ discussed Claimant's treatment for depression from
Affordable After Hours Health Care Center, Inc. Claimant received
medication for depression. She reported loss of interest in
activity, dislike of other people, problems staying calm around
others, and trouble sleeping. She did well on medication and was
advised to reduce stress, find a counselor, and stay active as
physical activity would help reduce her anxiety. (Tr. 20, 342-47,
402-05, 412, 460-63).

Claimant began treatment with Myra Gregory, D.O., in August
of 2017, stating that her mental health issues were not getting
better. Upon examination, her mood and affect were normal and
memory and judgment were normal. She was assessed with anxiety and

bipolar disorder. Her medication was changed. (Tr. 21, 355-57). When Claimant returned in September of 2017, she reported doing better, denied depression or mood swings, and her mood, affect, memory, and judgment were normal. (Tr. 21, 352-54). Claimant's mental status was noted to be "much improved" by November of 2017. (Tr. 21, 349-51). By mid-November, however, Claimant complained of depression and requested to see a counselor. (Tr. 21, 440-42). Yet by mid-December of 2017, Claimant again denied depression or mood swings and her mental examination was normal. (Tr. 437-39).

Claimant was seen by Erin Haytaian, APRN, via telemedicine, on December 6, 2017. She was referred by Dr. Gregory. She reported anxiety and depression, that she had received medication from Dr. Gregory, and that she had not had inpatient or outpatient treatment. Claimant complained of being easily distracted, unable to focus, agitation, a dislike of other people and being touched, racing thoughts, and trouble sleeping. She was assessed with depression and anxiety, new medication was added, and she was encouraged to seek counseling. (Tr. 21, 359-65). When Claimant returned in January of 2018, she was stressed by the holidays, but upon examination, recent and remote memory were intact and thought processes were logical and organized. Therapy was recommended to Claimant. (Tr. 21, 366-71). When she returned to Dr. Gregory in February of 2018, however, Claimant denied depression or mood swings and her mental examination was normal. (Tr. 21, 380-82).

Claimant was again seen by Ms. Haytaian in April of 2018. Although she reported issues with focus and attention, panic attacks, depression, tearfulness, low motivation and energy, and forgetfulness, her mental examination revealed intact recent and remote memory, good judgment, logical and organized thoughts, normal speech, and no tremor, but Claimant appeared dysthymic, anxious, and despairing. Her affect was blunted and constricted, and she had racing thoughts. Claimant was prescribed medication and advised to seek counseling. (Tr. 22, 490-96). By her August of 2018 telemedicine appointment with Ms. Haytaian, Claimant reported her mood was "fine, some irritability", but she related this to waiting on disability. She requested additional medication. (Tr. 22, 502-07).

Claimant began seeing Eric Broadway, M.D., in September of 2018, for ADHD. Claimant was assessed with ADHD and anxiety and prescribed Adderall. (Tr. 22, 508-12). When Claimant returned in October of 2018, she reported improved concentration (she could read a book) and she was getting along with her parents (she still liked to stay in her room). Claimant experienced panic attacks when going to Wal-Mart, but she did go outside for walks. (Tr. 22, 513-17). At her appointment in November of 2018, Claimant reported her moods were "[n]ot so bad lately[,]" and her focus and concentration were "doing great." She reported being nervous and anxious and not being able to sit still. (Tr. 22, 520-24). Claimant

continued to see Dr. Broadway through at least June of 2019. Over the period from January through June, Claimant reported good days and bad days with her mood, lack of interaction with others but was interacting with family, no side effects from medication, and by June of 2019, her mood was "okay," and she had no recent panic attacks. She was sometimes paranoid of others watching her and left the house once per month to attend appointments and shop. (Tr. 22-23, 566-70, 571-75, 576-80, 581-85, 586-90).

Regarding opinion evidence, the ALJ considered a letter from Dr. Broadway dated January 9, 2019, wherein he identified Claimant as his patient and indicated she "is unable to work due to her illness." (Tr. 25, 518). The ALJ noted that Dr. Broadway declined to complete disability paperwork and found his letter "of limited persuasiveness." (Tr. 25, 637). He concluded that although Dr. Broadway treated Claimant, "he did not reference any objective testing or other medical evidence to support his statement and he did not reference functional issues that prevented the claimant from work." (Tr. 25).

The ALJ also considered the opinion of the state agency reviewing psychologist who determined that Claimant could perform simple tasks with routine supervision, could relate to supervisors, peers, and the general public on a superficial work basis, and could adapt to a routine work situation. (Tr. 24-25). He found the opinion persuasive, noting Claimant's medical

9

treatment and mental exams indicated a person capable of unskilled work. He further noted that although Claimant's testimony indicated she avoided social situations, she was capable of going to the store, appointments, meetings, and her condition improved with medication. (Tr. 25).

The ALJ determined Claimant had the RFC to perform a full range of work at all exertional levels, but he also limited Claimant to "simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes and no more than incidental contact with co-workers, supervisors and the general public." (Tr. 19). The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Thus, the ALJ adequately accounted for Claimant's mental limitations in the RFC.

### Evaluation of Subjective Complaints/Witness Statements

Claimant also argues that the ALJ failed to properly evaluate her subjective complaints. She contends the factors relied upon by the ALJ do not support his evaluation, including his reliance on Claimant's daily activities, his consideration of pain, and control of her symptoms by medication.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any

findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 416.929. (Tr. 19). After summarizing the medical evidence and other evidence in the record, as well as Claimant's testimony regarding her symptoms, the ALJ determined Claimant's medically determinable impairments could reasonably cause her alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with such evidence. (Tr. 20-23).

11

The ALJ considered several factors when evaluating Claimant's symptoms. He found that Claimant's complaints that she could not work were inconsistent with her activities. (Tr. 23). Although discussed more in the context of her alleged physical limitations, the ALJ, citing evidence, determined that "[C]laimant's degree of pain relief seeking behavior and treatment is not indicative of a degree of pain that would limit activities beyond the scope of the [RFC] as determined in [the] decision." (Tr. 23). Moreover, the ALJ relied upon the factors that some of her symptoms were controlled by medication and her failure to follow recommended treatment in the form of counseling. (Tr. 24). The ALJ relied upon appropriate factors in evaluating Claimant's subjective statements of her symptoms. This Court finds no error in the ALJ's evaluation.

Claimant also contends the ALJ improperly considered the hearing testimony of her mother and the third-party function report completed by her sister. However, such evidence from family members is considered "evidence from nonmedical sources." *Keener v. Saul*, 2021 WL 2460614, at *3 (W.D. Okla., June 16, 2021), quoting 20 C.F.R. § 416.913(a)(4). Under the new regulations, "[a]n ALJ is 'not required to articulate how [he] considered evidence from nonmedical sources.'" *Id.*, quoting 20 C.F.R. § 416.920c(d).[2] An

---

[2]    Because Claimant filed her claim after March 27, 2017, the new regulations apply to the consideration of opinion evidence. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).

ALJ is not, however, absolved from considering non-medical source evidence when formulating the RFC. Such statements from family are still to be considered by the ALJ. *Id.*, n.4 ("[C]urrent regulations continue to require the ALJ to consider 'all the relevant medical and other evidence in your case record' when formulating the RFC."), quoting 20 C.F.R. §§ 416.920(e), 416.945(a)(3).

Here, the ALJ specifically considered the third-party report and the hearing testimony of Claimant's mother. In addition to noting the statements were not from medically trained individuals and that they could not be considered disinterested parties because they were Claimant's relatives, the ALJ also declined to give the statements significant weight because they were inconsistent "with the preponderance of the opinions and observations by medical doctors in [the] case." (Tr. 25). Although he provided reasons for discounting them, under the new regulation, the ALJ was not required to articulate how he considered the reports. *See* 20 C.F.R. § 416.920c(d); *Keener*, 2021 WL 2460614, at *3-4. Thus, there is no error in this regard.

**Step Five Determination**

Claimant argues that because the RFC was incomplete it could not form the basis for the VE's testimony that Claimant could perform other jobs which existed in significant numbers in the national economy.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

The Court finds no error in the ALJ's questioning of the VE. The hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 28th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE